Dear Mr. Goode:
Your request for an Attorney General's Opinion has been assigned to me for research and reply. On behalf of the Village of Sicily Island, you have asked for our opinion on whether the Village of Sicily Island may discontinue water and gas service to those customers who refuse to pay for such services.
Our office addressed a similar question in Attorney General Opinion No. 80-1202. There, the St. Charles Parish Waterworks District asked whether they could legally discontinue water service if a customer violates a parish ordinance or refuses to pay fees charged by other public entities for services such as garbage or sewerage fees. In response, we opined that a Waterworks District could terminate water service if that particular bill is not paid, after due process requirements are met. Similarly, we believe the Village of Sicily Island may terminate water and gas service to those customers who refuse to pay for such service, provided due process requirements are met.
The Louisiana Public Service Commission generally regulates all common carriers and public utilities. La.Const. Art. 4, Sec. 21(B). However, the Louisiana Constitution of 1974 restricts the Commission's regulatory jurisdiction over a utility that is owned, operated or regulated by a political subdivision's governing body. La.Const. Art. IV, Sec. 21(C).
Based on my conversations with the Louisiana Public Service Commission (LPSC), the Village of Sicily Island is exempt from the jurisdiction of the LPSC. However, local regulation of the Village's utility systems remains subject to all applicable state and federal constitutional and statutory law and regulations. Furthermore, although utilities owned by political subdivisions remain exempt from the jurisdiction of the LPSC, the LPSC's guidelines and requirements for private utilities can be helpful to political subdivisions when dealing with customers. *Page 2 
In this regard, we note that the LPSC has issued an order governing the time, manner, and type of notice that must be given before utility services are discontinued. The LPSC also has issued an order governing the termination of services to customers, where such termination would be especially dangerous to the customer. Copies of these orders are attached for your review.
Accordingly, it is the opinion of this office that the Village of Sicily Island may discontinue water and gas service to those customers who refuse to pay for such services, after due process requirements are met.
We trust this adequately responds to your request. If you should have any questions about the response contained herein, please feel free to contact our office.
 Yours very truly,
 CHARLES C. FOTI, JR.
 Attorney General
 BY:__________________________
 MICHAEL J. VALLAN
 Assistant Attorney General
 LOUISIANA PUBLIC SERVICE COMMISSION GENERAL ORDER
In re: Affecting Utility Companies subject to the Jurisdiction of the Commission
At a meeting of the Louisiana Public Service Commission held at Baton Rouge, Louisiana, on September 5, 1957, the matter of discontinuance of service due to nonpayment of bills was considered.
It appears that proper and timely notice has not been given by some utilities of their intention to discontinue service for nonpayment of bills and it is the Commission's opinion that some uniformity in this connection should be established.
IT IS ACCORDINGLY ORDERED, that no utility company shall discontinue its service to any customer or subscriber for nonpayment of bills without first having served upon such customer or subscriber direct and specific notice of its intention to discontinue such service five days in advance of the actual discontinuance of service. Such notice shall not be general in character, but shall specifically advise the individual customer concerned that service will be discontinued five days thereafter unless his bill is paid. The contents of such notice shall be limited to the purpose above described and shall not include any other matter. And it is further,
ORDERED that five full days shall be allowed after service of such notice before the customer's service is actually discontinued. And it is further,
ORDERED that a general notice printed on bills, letterheads, or other written material issued by the utility to the effect that such service will be discontinued five days after failure to pay the bill by a certain date shall not be deemed compliance with this order.
BY ORDER OF THE COMMISSION
BATON ROUGE, LOUISIANA
SEPTEMBER 10, 1957
Nat B. Knight Jr.; Chairman
John J. McKeithen; Commissioner
 Ernest S. Clements; Commissioner *Page 1 
 LOUISIANA PUBLIC SERVICE COMMISSION EX PARTE
In re: Application of Louisiana Consumer's League, Inc. for adoption by the Commission of the Model Utility Service Regulations drafted by the National Consumer Law Center to be applicable to all regulated utilities.
The Louisiana Consumer's League, Inc. (the "Applicant" or "LCL") submitted an application to this Commission in which it proposed that the Commission adopt the Model Utility Service Regulations ("MUSR") which were drafted by the National Consumer Law Center and which would be applicable to all regulated utilities.
Subsequent to the date the application of LCL was filed with the Commission, Congress enacted Public Law 95-617, entitled the Public Utility Regulatory Policies Act of 1978 ("PURPA"), one of a series of bills contained in the National Energy Act. Such Act was signed into law by President Carter on November 9, 1978. Titles I and III of PURPA deal with retail regulatory policies for electric utilities (Title I) and the retail policies for natural gas utilities (Title III).
In addition to the ratemaking standards, Title I sets forth certain service standards for covered electric utilities which must be considered by the Commission by November 9, 1980 and a determination made by the Commission as to the appropriateness of each. The five service standards applicable to covered electric utilities are as follows:
 1. Master Metering
 2. Automatic Adjustment Clauses
 3. Information to Consumers
 4. Procedures for Termination of Electric Service
 5. Advertising
Title III includes two service standards for covered gas utilities which are as follows:
 1. Procedures for Termination of Natural Gas Service
 2. Advertising
After a review of the provisions of PURPA relating to the service standards referred to above, this Commission finds that, by actions already initiated by the Commission, the covered utilities are already in compliance with or partially in compliance with such standards. However, this Commission finds it appropriate to seek additional information and the comments from the covered utilities with respect to such service standards proposed in PURPA. Since the MUSR addresses certain of these standards, this Commission ordered public generic hearings to be held under this docketed case to consider all of the service standards referred to herein as required by PURPA.
Public hearings were held before Hearing Examiner Roy F. Edwards at Baton Rouge, Louisiana on February 6, 1979 and August 9, 1979 to receive the sworn direct testi-mony of witnesses as well as the cross-examination of such witnesses on the subject matter covered by the PURPA service standards. The transcript of the record of the proceedings; exhibits filed in connection with testimony given; and responses to data requests sent by the Louisiana Consumer's League to certain utilities participating in this proceeding are available to the public. *Page 2 
This entire subject was considered at an Open Session of this Commission which was held at Baton Rouge, Louisiana on October 13, 1980 and it is the opinion of this Commission and this Commission finds as follows:
 1. The application of Louisiana Consumer's League, Inc. for adoption of the Model Utility Service Regulations drafted by the National Consumer Law Center should be dismissed.
 2. The recommendations of the staff for compliance with the Public Utilities Regulatory Policies Act of 1978 should be approved.
 3. The previous orders and directives of this Commission as well as the Commission accepted tariff provisions of the covered utilities which addressed themselves to the service standards and special rules of PURPA should be reaffirmed.
Accordingly, it is ORDERED that:
 1. The application of LCL for the adoption by the Commission of the Model Utility Service Regulations drafted by the National Consumer Law Center to be applicable to all regulated utilities be and is hereby dismissed.
 2. This Commission's General Order dated April 20, 1978 which prohibited the electric public utilities doing business in this State from providing master metered electric service after April 20, 1978 to any new privately owned apartment complexes and other new privately owned residential dwellings and structures except those apartments which were receiving service through a master meter prior to the date of such Order or for which commitments have been made be and is hereby reaffirmed.
 3. This Commission reaffirms its position that it does not allow automatic adjustment clauses as defined in Section 115(e) of PURPA with respect to any of the electric utility companies subject to its jurisdiction. The existing practices and procedures followed by this Commission with respect to the flow-through of increases in the cost of fuel used to generate electricity shall continue in effect.
 4. Each covered electric utility shall make available to its customers for their inspection at each business office of the Company in the State during normal business hours the information for consumers required by Section 115(f) (1)and (2) of PURPA re lating to rate schedules applicable to each of the major classes of its electric consumers for which there is a separate rate and shall transmit, upon request, to consumers a clear and concise statement of the actual consumption of electric energy by such consumer for each billing period during the prior year in those cases in which a dispute arises concerning electricity used by the consumer. The Commission's Staff at the Baton Rouge Office of the Commission shall have available and shall assist consumers in a review of all rate schedules for covered electric utilities upon receipt of a request from a consumer. The Commission notes that the electric utilities in this State provide a booklet, upon request from a customer, which states the terms and conditions with respect to service; applicable rate schedules; and, instructions on how to read electric meters. The procedures set forth herein shall be adopted in lieu of the standard concerning information to consumers suggested by Section 115(f) (1) and (2) of PURPA based on the Staff's recommendation since the Staff has concluded that the expense electric utility companies would incur to provide all customers with the information listed in Section 115(f) (1) and (2) of PURPA can not be justified on a cost-benefit basis. *Page 3 
 5. The tariffs of electric utility companies and gas utility companies on file with this Commission as well as the General Orders issued by this Commission cover the procedures for termination of electric service and/or gas service. Such procedures comply with Sections 115(g)(1) and 304(a) of PURPA dealing with proper notice to the customers before service is terminated. However, each covered electric utility company and/or covered gas utility company be and is hereby ordered to amend its service rules to include a provision that service to a customer shall not be terminated during any period when the covered utility has been advised or has reason to believe that the termination of service would be especially dangerous to the health of the customer or a member of the household and such consumer establishes the following:
 a) The consumer is unable to pay for such service in accordance with the requirements of the utility's billing, or
 b) The consumer is able to pay for such service only in installments.
 6. This Commission reaffirms its position that advertising expenses to provide information concerning the service of the utility may be borne by the ratepayers but advertising expenses to persuade the public to accept the position of the utility with respect to a particular issue shall be borne by the stockholders. In addition, its General Order dated March 12, 1974 which prohibited promotional advertising by public utilities continues in effect.